**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **BRANCH BANKING & TRUST COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:12-cv-419 (MTT)** |
| **PINE TIMBER WOOD PRODUCTION, INC., et al.,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

## ORDER

This matter is before the Court on Plaintiff Branch Banking and Trust Company's ("BB&T") motion for summary judgment.  (Doc. 20).  BB&T seeks to recover amounts due pursuant to promissory notes between BB&T and Defendant Pine Timber Wood Production, Inc. ("Pine Timber") and guaranty agreements between BB&T and Defendants Dennis L. Carey and John E. Morris, Sr.  For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

There are eleven promissory notes Pine Timber executed in favor of BB&T that are the subject of this litigation: (1) Note 12 entered into on February 26, 2008 in the original principal amount of $200,000 (Doc. 20-3 at 1-4); (2) Note 14 entered into on May 7, 2008 in the original principal amount of $300,000 (Doc. 20-4 at 1-4); (3) Note 20 entered into on October 15, 2008 in the original principal amount of $125,000 (Doc. 20-5 at 1-4); (4) Note 26 entered into on August 14, 2009 in the original principal

amount of $29,200 (Doc. 20-6 at 1-4); (5) Note 29 entered into on September 23, 2009 for the original principal amount of $170,500 (Doc. 20-7 at 1-4); (6) Note 31 entered into on November 30, 2009 for the original principal amount of $101,258 (Doc. 20-8 at 1-4); (7) Note 32 entered into on December 23, 2009 for the original principal amount of $81,320[1] (Doc. 20-9 at 1-4); (8) Note 33 entered into on February 11, 2010 for the original principal amount of $10,000 (Doc. 20-10 at 1-4); (9) Note 39 entered into on April 22, 2010 for the original principal amount of $100,160 (Doc 20-11 at 1-4); (10) Note 43 entered into on July 28, 2010 for the original principal amount of $200,000 (Doc. 20-12 at 1-4); and (11) Note 44 entered into on September 2, 2010 for the original principal amount of $350,000 (Doc. 20-13 at 1-4).  BB&T advanced funds to Pine Timber pursuant to each of these notes.  (Doc. 27 at 49:1-8).[2]

In conjunction with each note, Pine Timber executed security agreements granting BB&T a purchase money security interest in various collateral: hardwood, pine, and spruce purchased from Tucker Pond Plantation for Note 12 (Doc. 20-3 at 11-17); certain Tiger Cat feller bunchers, a Barko loader, and skidders for Note 14 (Doc. 20-4 at 21-26); approximately 1387 acres of timber in Upson County, Georgia for Note 20 (Doc. 20-5 at 21-27); the "Jinks" tract of timber for Note 26 (Doc. 20-6 at 11-16); a Barko log loader with pressurized cab and delimber for Note 29 (Doc. 20-7 at 6-11); approximately 112 acres of timber known as the "Jemiel" tract for Note 31 (Doc. 20-8 at 11-16); timber for Note 32 (Doc. 20-9 at 11-16); the "Beckham" tract of timber for Note 33 (Doc. 20-10 at 11-16); the "St. Regis" tract of timber for Note 39 (Doc. 20-11 at 11-17);

---

[1] According to BB&T's statement of material facts, the original principal amount of Note 32 was $81,300.  However, the note shows the amount was $81,320.

[2] The page numbers correspond to the CM/ECF stamp, as opposed to the page numbers listed on the depositions.

approximately 448 acres of timber located in Monroe County, Georgia for Note 43 (Doc. 20-12 at 11-17); and a Tiger Cat track and saw head for Note 44 (Doc. 20-13 at 6-11).

Defendant Carey, the President and the majority owner of Pine Timber, executed three guaranty agreements in favor of BB&T on September 2, 2010, December 24, 2010, and February 22, 2011.[3] (Docs. 20-14; 27 at 9:22-25, 10:23-24). In these agreements, he absolutely and unconditionally guarantied repayment of the amounts Pine Timber owed pursuant to the notes discussed above. (Doc. 20-14). Defendant Morris, a Vice President and the other owner of Pine Timber, also executed a guaranty agreement in favor of BB&T on December 24, 2010. (Docs. 20-15; 28 at 7:3-16). He absolutely and unconditionally guarantied repayment of the amounts Pine Timber owed pursuant to the notes discussed above. (Doc. 20-15).

All the notes are in default because some of their terms and provisions have been breached. For instance, Pine Timber failed to pay the outstanding indebtedness on Note 20, Note 26, Note 31, Note 32, Note 39, and Note 43 upon maturity. (Docs. 1, ¶ 75; 1-17 at 1). On November 4, 2011, BB&T notified Pine Timber it was exercising its right to accelerate the entire indebtedness due on the notes and declare it due and payable in full because of the known defaults. (Docs. 20-16; 27 at 27:12-24).

Each note provides that Pine Timber agrees to pay "all costs of collection and reasonable attorneys' fees" in addition to the outstanding principal and interest if the note is placed with an attorney for collection. The demand letter sent on November 4, 2011 also informed the Defendants that if the entire balance of the notes was not paid within ten days of their receipt of the letter, BB&T would enforce the provisions of the

---

[3] Though not mentioned in BB&T's statement of material facts, Carey also executed a guaranty agreement on April 25, 2011. (Doc. 20-14 at 10-12).

notes relating to attorneys' fees.  (Doc. 20-16 at 2-3).  The Defendants failed to pay the entire indebtedness within the ten-day window.

On March 7, 2012, BB&T entered into a forbearance agreement with the Defendants whereby BB&T agreed not to exercise its rights and remedies under the notes and related loan documents through June 15, 2012.  (Doc. 20-17).  In the forbearance agreement, the Defendants acknowledge Pine Timber is in default, the debt has been accelerated, and they have received notice of the default.  (Doc. 20-17 at 4).  They waive any defenses they may have as to the "validity, execution or enforceability of the Notes, or any of the other Loan Documents, and further waive any further notice or presentment with regard to [Pine Timber's] default under the terms of the Loan Documents and the Lender's acceleration of the Notes."  (Doc. 20-17 at 4). Further, the Defendants acknowledge the specific amounts due on the notes as of March 7, 2012.  (Doc. 20-17 at 2-4).

On May 13, 2013, BB&T and Pine Timber entered into a collateral sale agreement whereby BB&T authorized Pine Timber to sell certain collateral in exchange for payment to BB&T of $310,000.  (Doc. 20-18).  Pine Timber paid BB&T the $310,000 on May 14, 2013, and BB&T applied it against the indebtedness.  (Doc. 20-19, ¶ 10). This $310,000 is the only payment made to BB&T since the expiration of the forbearance agreement.

## II. DISCUSSION

### A.  Jurisdiction

The Defendants do not contest the merits of BB&T's claims on the notes and guaranties.  Instead, they contend: 1) the Court lacks subject matter jurisdiction

because BB&T has not established complete diversity of citizenship, and 2) BB&T has failed to establish the Court has personal jurisdiction over Defendants Carey and Morris. On April 10, 2014, the Court ordered BB&T to amend its complaint to assert any basis for personal jurisdiction over Defendants Carey and Morris other than their Georgia residency and to submit an affidavit detailing the factual basis for the assertion that its principal place of business is in North Carolina.[4]  (Doc. 29).

The Defendants attempt to challenge the existence of subject matter jurisdiction in fact, irrespective of the allegations in the complaint.  *See McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999) (explaining difference between facial and factual attack on subject matter jurisdiction).  Thus, the Court may consider matters outside the pleadings.  *Id.*  Jurisdiction is this case is based on diversity of citizenship.  *See* 28 U.S.C. § 1332(a).  A corporation, such as BB&T, is considered a citizen of every state in which it is incorporated, as well as the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).  A corporation's "principal place of business" refers to the corporation's "nerve center" where its "officers direct, control, and coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  "[I]n practice it should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination … and not simply an office where the corporation holds its board meetings … ." *Id.* at 93.

The Defendants argue BB&T has not proven its principal place of business is in North Carolina as alleged in the complaint.  While the Defendants can certainly raise

---

[4] The original complaint alleges personal jurisdiction over Carey and Morris because they are Georgia citizens; however, in their answer and depositions, the Defendants assert Carey and Morris reside in and are citizens of Florida.

factual challenges to the Court's jurisdiction, the evidence they contend suggests BB&T's principal place of business is somewhere other than North Carolina is somewhat puzzling.  They point to where the loan was made and where the payments are sent.  (Doc. 24 at 3).  The Court is unsure how this relates to the location of BB&T's "nerve center."  Nonetheless, BB&T has now submitted the affidavit of Yvonne M. Beck, an assistant vice president for BB&T, showing the factual basis for the assertion that its principal place of business is in North Carolina.  (Doc. 30).  Beck states that BB&T's principal office is located at 200 West Second Street, Winston-Salem, North Carolina and that the corporate president, secretary, treasurer, and other senior officers of BB&T maintain their offices at this location.  (Doc. 30, ¶ 4).  She further states the officers "direct, control, and coordinate the activities of BB&T" from this principal office.  (Doc. 30, ¶ 4).  A copy of BB&T's annual report filed with the North Carolina Secretary of State confirms BB&T is incorporated in North Carolina and lists the addresses of the principal officers as 200 West Second Street, Winston-Salem, North Carolina.  (Doc. 30 at 4).  The Defendants assert they have no response to Beck's affidavit.  (Doc. 33). Based on the submissions, the Court is satisfied it has subject matter jurisdiction over the case.

BB&T has also amended its complaint to allege that Carey and Morris are subject to the personal jurisdiction of this Court because they "have transacted business in the State of Georgia and because the Guaranties they executed … which are at issue in this case contain a provision requiring that any disputes arising under the Guaranties be brought in the 'state or federal courts of Georgia and in no other forum.'"  (Doc. 31, ¶

6).  The Defendants have admitted paragraph 6 of the complaint as amended.  (Doc.

32, ¶ 6).  Thus, personal jurisdiction is no longer an issue.

### B.  Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable

jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City

of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels

of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving

party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*,

281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by

"citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those

made for purposes of the motion only), admissions, interrogatory answers, or other

materials."  Fed. R. Civ. P. 56(c)(1)(A).

"If the moving party bears the burden of proof at trial, the moving party must

establish all essential elements of the claim or defense in order to obtain summary

judgment."  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (citing

*Four Parcels of Real Prop.*, 941 F.2d at 1438).  The moving party must carry its burden

by presenting "credible evidence" affirmatively showing that, "on all the essential

elements of its case on which it bears the burden of proof at trial, no reasonable jury

could find for the nonmoving party."  *Four Parcels of Real Prop.*, 941 F.2d at 1438.  In

other words, the moving party's evidence must be so credible that, if not controverted at trial, the party would be entitled to a directed verdict. *Id.*

"If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)) (alteration in original). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. ... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, the Court "'can only grant summary judgment if everything in the record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (quoting *Tippens v. Celotex Corp.*, 805 F.2d 940, 952 (11th Cir. 1986)).

### C. Plaintiff's Claims

Under Georgia law, "[w]here … the record shows that the promissory note and guarantees were duly executed by the debtors and that they are in default, a prima facie right to judgment as a matter of law [is] established, and the burden shift[s] to [the defendants] to produce or point to evidence in the record which establishe[s] an affirmative defense." *Secured Realty Inv. v. Bank of N. Ga.*, 314 Ga. App. 628, 629, 725 S.E.2d 336, 338 (2012); *see also Collins v. Regions Bank*, 282 Ga. App. 725, 726, 639 S.E.2d 626, 627 (2006). BB&T has presented copies of the promissory notes and guaranties at issue, and the Defendants do not dispute executing them. BB&T has also

shown the Defendants are in default on their obligations, which the Defendants have not contested.  As discussed above, the only defenses the Defendants have presented are without merit.  Thus, BB&T is entitled to summary judgment on the Defendants' liability.

BB&T is also entitled to summary judgment on the amount of damages and on its claim for attorneys' fees pursuant to O.C.G.A. § 13-1-11.  The Defendants do not contest that as of September 13, 2013, the total indebtedness owed on the eleven notes was $1,298,028.41 and that interest continues to accrue at the rate of $166.79 per day through the date of judgment.  (Doc. 20-2, ¶ 32).[5]  Thus, as of the date of this Order, the Defendants are liable for $1,337,057.27, representing the amount of outstanding principal and accrued interest to date.

O.C.G.A. § 13-1-11(a) deems "[o]bligations to pay attorney's fees upon any note or other evidence of indebtedness" enforceable as long as:

> (1) the note's terms include an obligation to pay attorney fees; (2) the debt owed under the note has matured; (3) notice was given to the debtor informing him that if he pays the debt within ten days of the notice's receipt, he may avoid attorney fees; (4) the ten day period has expired without payment of the principal and interest in full; and (5) the debt is collected by or through an attorney.

*TermNet Merch. Servs., Inc. v. Phillips*, 277 Ga. 342, 344, 588 S.E.2d 745, 747 (2003) (citing O.C.G.A. § 13-1-11(a)(1)-(3)).  If the note provides for "reasonable attorney's fees" but does not specify a percentage, "such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other

---

[5] This amount is taken from BB&T's statement of material facts.  It was calculated by taking the amount due as of October 19, 2012 set forth in the verified complaint (Doc. 1, ¶ 88) and bringing it forward with the per diem interest rate after applying the $310,000 from the collateral sale first to accrued statutory attorneys' fees and then to the debt (Doc. 20-2, ¶ 32).

evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." O.C.G.A. § 13-1-11(a)(2).

As discussed above, each note includes a provision requiring Pine Timber to pay "reasonable attorneys' fees" if the note is placed with an attorney for collection. The debt on the notes matured when BB&T accelerated the entire amounts due upon default. Carey and Morris absolutely and unconditionally guaranteed repayment of the amounts Pine Timber owed pursuant to these notes. BB&T sent the Defendants a demand letter satisfying the statutory notice requirement, and other than the $310,000 payment applied to outstanding debt and attorneys' fees, the Defendants have not paid the amounts due. Thus, BB&T is entitled to reasonable attorneys' fees calculated according to the statute. BB&T applied the $310,000 payment received from the collateral sale to the $144,357.22 owed in attorneys' fees as of May 14, 2013[6] and has not sought additional fees in its motion. (Doc. 20-2, ¶ 32). The Defendants do not dispute that BB&T is entitled to the attorneys' fees it seeks. The Court concludes BB&T is entitled to the $144,357.22 in attorneys' fees paid out of the $310,000 it received as a result of the collateral sale.

### III. CONCLUSION

BB&T's motion for summary judgment (Doc. 20) is **GRANTED**. The Defendants are jointly and severally liable to BB&T for $1,337,057.27.

---

[6] This amount was calculated as 15% of the first $500 of the outstanding principal and interest due on the notes and 10% of the remaining principal and interest as of May 14, 2013. (Doc. 20-2, ¶ 32).

**SO ORDERED,** this 5th day of May, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT